GLICKSTEIN, Judge,
concurring specially-
This is a petition for writ of common law certiorari to review a non-final order of the circuit court. I agree with the denial of the petition as neither of the two grounds required for the granting of such petition has been met.
Several subcontractors filed suit against a prime contractor, Kessel Construction Company, for sums due under their respective contracts. These plaintiffs are Robertson-Geller Drywall Contractors, Gagnon *1124 Construction Company, Acousti Engineering Company of Florida, and Sharsand Associates, Inc. The construction project on which they worked was the Palm Beach County administrative complex. The subcontractor plaintiffs also sued Aetna Insurance Company on Kessel’s performance bond.
Kessel and Aetna filed counterclaims, and then amended counterclaims, against each of the subcontractor/plaintiffs. These amended counterclaims were identical except for the names of the subcontractors and the dates of the respective contracts. They sought relief against the respective subcontractors on the alternative theories of contractual indemnity, count I; commonlaw indemnity, count II, or contribution among joint tortfeasors, count III.
At the trial level Gagnon successfully argued in support of its written motion to dismiss all three counts of Kessel’s counterclaim against it, the trial court ruling in favor of Gagnon on count II, common law indemnity, and count III, contribution, but not on count I, the contractual indemnity claim. Robertson-Geller, Acousti and Shar-sand then moved orally for an order that had the same result as to the counterclaims against all the subcontractors. Kessel agreed there was no material difference among the various counterclaims. The court granted the ore tenus motions as to the second and third counts against the remaining subcontractors/plaintiffs. The written order contains some errors, but the parties purportedly agree that we consider counts II and III of petitioner’s counterclaim against the subcontractors as having been dismissed with prejudice.
In my view, the counts of the counterclaims that were dismissed with prejudice are interrelated with the main suit and the first counts of the amended counterclaims; therefore the order sought to be reviewed is not appealable under Florida Rule of Appellate Procedure 9.110(k) as a partial final judgment. Neither does the order fall into the categories of non-final orders ap-pealable under rule 9.130(3). Hence, if the order may presently be reviewed, it would have to be by certiorari.
I first consider whether there has been a departure from the essential requirements of law. Chief Justice Boyd’s recent special concurrence in Jones v. State, 477 So.2d 566 (Fla.1985), is enlightening upon that point, wherein he says:
It is important to distinguish the concept of a “departure from the essential requirements of law” from the concept of legal error. On a petition for the common-law writ of certiorari, the legal correctness of the judgment of which review is sought is immaterial. The required “departure from the essential requirements of law” means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice. The writ of certiora-ri properly issues to correct essential illegality but not legal error.
Id. at 569. The opinion’s use of the word “tyranny” comes from Brinson v. Tharin, 99 Fla. 696, 127 So. 313 (1930). If I apply the above test, the trial court’s action does not reach such plateau. Whether it was legal error would be a question to be determined on plenary appeal, which leads me to the next question. Does the petitioner have adequate relief by plenary appeal?
Petitioners contend that the harm done by the dismissal with prejudice of their common law indemnity counts and their contribution counts against the various subcontractors cannot be remedied on plenary appeal. Their reasoning is that reversal of those dismissals on plenary appeal would result in a second trial to allocate the liability among the joint tortfeasors. This second trial would be by a different trier of fact from the one that would have determined the petitioners’ liability that is to be allocated among the various parties in the second trial. They contend that Kessel could have been held vicariously liable in the first suit for the negligence of Robertson-Geller, for example, only to have the *1125 second trier of fact find that Robertson-Geller is not liable to Kessel for that same negligence. They point out also that had petitioners been held vicariously liable in the first suit they would also have to furnish a supersedeas bond — really for the counterdefendants — during the appeal.
As for the second argument, the cost of trial and appeal is not the kind of damage certiorari is intended to forestall. See, e.g., Siegel v. Abramowitz, 309 So.2d 234 (Fla. 4th DCA 1975). As to the other necessary elements for review by certiorari, the petitioners’ sustaining of damages, in my view, is speculative; and the purported lack of an adequate remedy at law upon plenary appeal also is speculative.
Plaintiffs are saying that if they are held liable to the developer and/or the owner of the building, because of the negligence of one or more of the subcontractors; and if, on appeal, this court determined the second and third counts of their counterclaims should not have been dismissed with prejudice, and orders a new trial on the issue of contribution or indemnity by the subcontractors), a new jury may not find the subcontractor(s) liable to the prime contractor/petitioner. Hence, petitioners say, in effect, there is not an adequate remedy to the injury. The logical response to this are these questions: How do we know the present jury will find Kessel liable? What if, should they find Kessel liable, the liability is ex contractu? What if they find Kes-sel liable other than ex contractu and the second jury does require contribution by the subcontractor(s)?
I conclude that speculative damage is not what the courts have in mind when they list material or irreparable injury to the petitioner throughout the remainder of the proceedings as a necessary condition for obtaining certiorari. Nor is the possibility a second jury will not decide favorably to petitioners’ evidence of a lack of adequate remedy.
I realize that while many cases are long on use of talismanic language and short on explaining it, either by definition or illustration, what matters is that if the court has erred, the error can be undone on plenary appeal, as by a new trial — onerous as that may be to weary and financially expended litigants. The kind of harm that cannot be undone, would be, for example, a situation where the trial court has erroneously ordered a party to discover business secrets to a competitor who may use those secrets in the business world against the party’s interest. Once these are revealed, they cannot be withdrawn. While this surely is not the only possible example, it helps to show that the iffy scenario projected by petitioners here is of a lesser order of injury, if it is injury at all.